IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM WOOD,                         *

    Plaintiff,                        *

v.                                    *        Civil Action No. GLR-24-2207

NFM INC.,                             *

    Defendant.                        *

***

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendant NFM Inc.'s ("NFM") Renewed Motion to Compel Appraisal and Dismiss for Improper Venue or in the Alternative, to Dismiss in Part for Failure to State a Claim (ECF No. 15). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the Motion.[1]

## I.    BACKGROUND[2]

This lawsuit arises out of NFM's alleged undercounting of hourly employees'

---

[1] Also pending before the Court is NFM Inc.'s original Motion to Compel Arbitration, or in the Alternative, to Dismiss in Part for Failure to State a Claim (ECF No. 11). Plaintiff William Wood filed an Amended Complaint on October 25, 2024, after this Motion was filed. (ECF No. 14). Accordingly, this Motion will be denied as moot. <u>See</u> <u>Due Forni LLC v. Euro Rest. Solutions, Inc.</u>, No. PWG-13-3861, 2014 WL 5797785, at *2 (D.Md. Nov. 6, 2014) (finding that an amended complaint generally moots a pending motion to dismiss the original complaint because the original complaint is superseded). To the extent NFM incorporates the Memorandum in Support of its original Motion (ECF No. 11-1) in its Renewed Motion (ECF No. 15), it is considered here.

[2] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

overtime work and its alleged failure to pay its hourly employees premium wages for hours worked in excess of forty hours a week. (Am. Compl. ¶¶ 4–14, ECF No. 14). Plaintiff William Wood worked as a loan originator for NFM from July 2021 to August 2023. (Id. ¶ 15). Wood alleges that he "routinely worked nights and weekends on top of his official 40-hour schedule," (id. ¶17), but NFM's "policy and practice" was to pay him the standard hourly rate for hours worked beyond forty hours a week, (id. ¶ 21). Wood also contends that his time records, which were "made by office administrators without his input" undercounted his hours worked, which resulted in him being underpaid. (Id. ¶¶ 19, 22).

As part of his employment, Wood entered into two "Lending Originator Compensation Plan" agreements with NFM: one on August 9, 2021 (the "2021 Agreement") and one on April 1, 2023 (the "2023 Agreement") (collectively, the "Agreements"). (Id. ¶ 44). The 2021 Agreement begins that it "is made and entered into for all applications taken on or after this 9th day of August 2021," (2021 Agreement at 2, 12–13, ECF No. 11-3) [3], and the 2023 Agreement begins that it "is made and entered into for all applications taken on or after April 1, 2023," (2023 Agreement at 2, 14, ECF No. 11-5). Both agreements contain arbitration provisions. The 2021 Agreement states:

> <u>Venue and Arbitration for Claims by Originator</u>: Any claim or dispute by ORIGINATOR [Plaintiff] that arises out of or that relates to this Agreement . . . . shall be settled through binding arbitration[], administered by the American Arbitration Association . . . . The arbitrator shall, in his or her discretion, award reasonable attorneys' fees and litigation costs to the substantially prevailing party . . . .

---

[3] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

> Venue for Claims by NFM: ORIGINATOR and NFM agree that, to the extent NFM has any claim that arises out of or relates in any way to this Agreement . . . then the exclusive forum to resolve any such dispute or claim shall be the state and federal courts covering the location where ORIGINATOR's branch is located.

(2021 Agreement at 12–13). The 2023 Agreement has a provision labelled "Binding Arbitration" that reads:

> [A]ny dispute, claim or controversy by and between the Parties arising out of or relating to ORIGINATOR'S employment with NFM, including but not limited to the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration . . . administered by JAMS . . . The arbitrator shall allocate all or part of the costs of the arbitration, including the fees of the arbitrator, and award reasonable attorneys' fees to the prevailing Party. The provisions of this paragraph may be enforced by any court having jurisdiction and the Party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including reasonable attorneys' fees, to be paid by the Party against whom enforcement is ordered.

(2023 Agreement at 14). Immediately following this provision is a bold paragraph, which Wood initialed, that states: "ORIGINATOR's initials (certifying that they have read the foregoing and have had the opportunity to ask questions about, including questions of an attorney of their choice, and enter into this provision freely and of their own choice)." (Id.).

The 2023 agreement also included an integration clause that states:

> This Agreement contains the entire understanding between the parties and supersedes any prior agreements, written or oral, respecting the subject matter of this Agreement. This Agreement may only be amended in writing by the parties. Such amendment to this Agreement shall be known as an addendum. In the event of any conflicts between the terms of this Agreement or any Addendum hereto and any other

3

documents entered into by the parties, the terms of this
Agreement or such Addendum shall govern.

(2023 Agreement at 16).

Wood filed an initial Complaint in this Court on July 29, 2024. (ECF No. 1). Wood
filed an Amended Complaint on October 25, 2024, (ECF No. 14). Wood brings claims on
behalf of himself and putative class members for violations of the Fair Labor Standards
Act ("FLSA"), 29 U.S.C. §§ 201 et seq., breach of contract, unjust enrichment, and
violations of the Article II, § 34a of the Ohio Constitution and § 4113.15 of the Ohio
Revised Code governing wage payments and recordkeeping. (Am. Compl. at 13–19).[4]
Wood seeks damages and restitution, liquidated and compensatory damages, declaratory
and injunctive relief, attorney's fees, and litigation expenses. (Id. at 19–20). On October 4,
2024, NFM filed a Motion to Compel Arbitration, or in the Alternative, to Dismiss in Part
for Failure to State a Claim. (ECF No. 11). NFM filed this instant Renewed Motion to
Compel Appraisal and Dismiss for Improper Venue or, Alternatively, to Dismiss in Part
for Failure to State a Claim on November 8, 2024. (ECF No. 15). Wood filed an Opposition
on November 22, 2024, (ECF No. 16), and NFM filed a Reply on December 6, 2024, (ECF
No. 17).

---

[4] Wood brings the FLSA claim on behalf of himself and other "similarly situated"
loan providers (Am. Compl. ¶¶ 1, 59–71). The claims for breach of contract and unjust
enrichment are brought on behalf of a putative nationwide class defined as "[a]ll current
and former non-exempt classified employees of [NFM] working as Loan Providers . . .
within the applicable statutory period" as well as on behalf of a putative "Ohio Subclass"
defined as "[a]ll current and former non-exempt classified employees of [NFM] working
as Loan Providers . . . throughout Ohio within the applicable statutory period." (Id. ¶¶ 48–
49, 58–59, 72–87). The claims under the Ohio Constitution and Ohio Revised Code are
asserted on behalf of the putative Ohio Subclass. (Id. ¶¶ 88–119).

## II.    DISCUSSION

### A.    <u>Choice of Law</u>

The parties agree that Maryland law governs this contractual dispute due to valid forum selections clauses that designate Maryland law as controlling. (2021 Agreement at 12, 2023 Agreement at 16).

In Maryland, courts follow "the law of objective contract interpretation, which provides that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding." <u>Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.</u>, 73 A.3d 224, 232 (Md. 2013) (internal quotation marks and citations omitted). Thus, "a contract's unambiguous language will not give way to what the parties thought the contract meant or intended it to mean at the time of execution." <u>Id.</u> A court must therefore seek to "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." <u>Id.</u>

When interpreting contract language, "the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." <u>Sy-Lene of Wash., Inc. v. Starwood Urb. Retail II, LLC</u>, 829 A.2d 540, 546 (Md. 2003). "[T]he contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and

reasonably followed." Dumbarton, 73 A.3d at 232–33 (quoting Sagner v. Glenangus Farms, Inc., 198 A.2d 277, 283 (Md. 1964)) (internal quotation marks omitted).

**B.    Standard of Review**

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." PC Constr. Co. v. City of Salisbury, 871 F.Supp.2d 475, 477 (D.Md. 2012) (alteration in original) (quotation omitted). Treating a motion to compel arbitration as a motion for summary judgment is proper where "the formation or validity of the arbitration agreement is in dispute," Caire v. Conifer Value Based Care, LLC, 982 F.Supp.2d 582, 589 (D.Md. 2013), or where documents outside the pleadings must be considered "to effectively assess the merits of [the] motion," Shaffer v. ACS Gov't Servs., Inc., 321 F.Supp.2d 682, 683–84 (D.Md. 2004); accord PC Const. Co., 871 F.Supp.2d at 477 ("Whether the motion [to compel arbitration] should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings."). See also Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 85 & n.3 (4th Cir. 2016) (stating that under the Federal Arbitration Act, a party seeking a jury trial "must show genuine issues of material fact regarding the existence of an agreement to arbitrate," a standard that is "akin to the burden on summary judgment" (quoting Chorley Enters. v. Dickey's Barbecue Rests., 807 F.3d 553, 564 (4th Cir. 2015))). Here, the Court will apply the summary judgment standard both because the parties dispute whether an arbitration agreement was properly formed and because resolving this dispute requires consideration of materials beyond the pleadings.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir.

2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Hooven-Lewis</u>, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. <u>Anderson</u>, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986) (quoting <u>Anderson</u>, 477 U.S. at 247).

**C.    <u>Analysis</u>**

**1.    Controlling Agreement**

As an initial matter, the parties dispute which Agreement governs this action. Wood purports to bring claims only under the 2021 Agreement. (Am. Compl ¶ 47; Pl.'s Opp'n Def.'s Mot. Compel Arbitration Alternative Dismiss ["Opp'n"] at 5–9, ECF No. 16). NFM contends that the 2023 Agreement controls because it states, "<u>any</u> dispute, claim or controversy by and between the Parties <u>arising out of or relating to [Wood's] employment with NFM</u>, including but not limited to the determination of the scope or applicability of this agreement to arbitrate, shall be determined by binding arbitration." (Def.'s Mem. Supp. Mot. Compel Arbitration Alternative Dismiss ["Mot."] at 8, ECF No. 11-1; 2023 Agreement at 14) (emphasis added). NFM further argues that the 2023 Agreement controls

8

because it includes an integration clause which provides, "[t]his Agreement contains the entire understanding between the parties and supersedes any prior agreements, written or oral, respecting the subject matter of this Agreement." (Mot. at 2–4; 2023 Agreement at 16). At bottom, the Court agrees with NFM.

When reviewing arbitration agreements, courts must "apply ordinary state law principles governing the formation of contracts, including principles concerning the 'validity, revocability, or enforceability of contracts generally.'" Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 179 (4th Cir. 2013) (quoting Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005)). Courts must "also apply the federal substantive law of arbitrability, which governs all arbitration agreements encompassed by the FAA." Id. "[W]hether a dispute is arbitrable presents primarily a question of contract interpretation, requiring [the court to] give effect to the parties' intentions as expressed in their agreement." Id. "[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [Federal Arbitration] Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 475–76 (1989) (citation omitted). Any uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration. Muriithi, 712 F.3d at 179 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, (1983)).

In Levin v. Alms & Assocs., Inc., the Fourth Circuit considered the exact issue presented here. 634 F.3d 260 (4th Cir. 2011). The parties in Levin entered into a series of

annual agreements, the last of which in 2007 contained an arbitration clause stating that "[a]ny dispute shall be submitted to binding arbitration" and an integration clause stating that the 2007 agreement "encompasses and embodies all terms, understandings and agreements by and between th[e] parties." Id. at 266–67. The Court found that, even though the arbitration clause did not expressly say that it applied retroactively, the broad scope of the arbitration clause and the "any dispute" language in the clause required even claims that accrued before 2007 be subject to arbitration. Id. at 269.

Wood argues that because the integration clause here contained the language "respecting the subject matter of this Agreement," it is more limited in scope than the integration clause at issue in Levin. (Opp'n at 8). The Court finds this argument unpersuasive. The "subject matter" of the 2023 Agreement is the same "subject matter" as the 2021 agreement. (Compare 2023 Agreement with 2021 Agreement). Both have the same title, and both discuss Wood's compensation terms and conditions. (Id.). The time periods for which the Agreements apply do not alter the broad subjects covered by the agreements. (Contra Opp'n at 7). The integration clause at issue here is even clearer than the integration clause in Levin because it specifically states that the 2023 agreement "supersedes any prior agreements. Compare (2023 Agreement at 16) with Levin, 634 F.3d at 267; see also Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 570 (4th Cir. 1998) (applying an arbitration clause retroactively in part because a section of the agreement stated "[t]his agreement supersedes all prior oral or written representations and constitutes the entire understanding"). Accordingly, under the plain language of the 2023 Agreement's integration clause, the 2021 Agreement was superseded.

10

The 2023 Agreement's arbitration provision is broadly worded and applies to "any dispute" arising from Wood's employment with NFM, without limitation as to date. "[T]he presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded." Levin, 634 F.3d at 267 (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)). And "courts have generally applied broad 'any dispute' language retroactively, especially when combined with language that refers to all dealings between the parties." Id. at 267–68 (discussing cases). Read together, the integration clause and arbitration provision together encompass "any disputes, past and present." Id. at 267. The Court finds that given the broad scope of the arbitration clause and the "heavy presumption of arbitrability requir[ing] that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration," the 2023 Agreement and arbitration clause control.[5] Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989).

Further, any questions about the scope of arbitration are themselves committed to arbitration by the terms of the 2023 Agreement. The arbitration provision here expressly covers "the determination of the scope or applicability of this agreement to arbitrate." (2023 Agreement at 14). Parties may agree to arbitrate "gateway" questions of arbitrability. Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68–69 (2010). Parties must agree in "clear and unmistakable" language that they will arbitrate issues of arbitrability. Carson v. Giant Food, Inc., 175 F.3d 325, 329–30 (4th Cir. 1999). The delegation clause here is similar to

---

[5] Accordingly, the Court need not consider Wood's arguments about the enforceability of the 2021 Agreement's Arbitration Clause.

ones the Supreme Court and Fourth Circuit have found to be "clear and unmistakable." <u>See</u> <u>Rent-A-Center</u>, 561 U.S. at 68 (finding clause that stated "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement" clear and unmistakable); <u>Novic v. Credit One Bank, Nat'l Ass'n</u>, 757 F.App'x 263, 266 (4th Cir. 2019) (finding the language "[c]laims subject to arbitration include . . . the application, enforceability or interpretation of [the cardholder agreement], including this arbitration provision" clear and unmistakable); <u>see also</u> <u>Carson</u>, 175 F.3d at 331 (explaining that parties should use language such as "all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration" to delegate issues of arbitrability to arbitration). The arbitration provision at issue here clearly and unmistakably requires arbitration of any issues concerning the applicability or scope of the arbitration clause.

### 2.    Enforceability of Arbitration Clause

Next, the Court turns to the enforceability of the 2023 Agreement's arbitration provision. Under the Federal Arbitration Act ("FAA") 9 U.S.C.A. § 1 <u>et seq.</u>, courts must enforce written arbitration agreements when a party seeks such relief. 9 U.S.C. § 3. The Act "reflects 'a liberal federal policy favoring arbitration agreements.'" <u>Adkins v. Lab.</u> <u>Ready, Inc.</u>, 303 F.3d 496, 500 (4th Cir. 2002) (quoting <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 24).

To prevail on a motion to compel arbitration, a party must show the existence of (1) a dispute between the parties; (2) a written arbitration provision that purports to cover the dispute; (3) a relationship between the transaction and interstate or foreign commerce; and

(4) the failure of a party to arbitrate the dispute. <u>Adkins</u>, 303 F.3d at 500–01 (quoting <u>Whiteside v. Teltech Corp.</u>, 940 F.2d 99, 102 (4th Cir. 1991)). The parties do not dispute that all four factors are satisfied here.

Wood instead contends that the arbitration clause in the 2023 Agreement is unenforceable for lack of mutual consideration because NFM retained a unilateral modification right. (Opp'n at 11). NFM argues that because the unilateral modification right is contained outside the arbitration agreement, it cannot invalidate the arbitration agreement. (Def.'s Reply Mem. Supp. Mot. Compel ["Reply"] at 8–9, ECF No. 17). The Court agrees with NFM.

Under Maryland law, an arbitration agreement must be a binding contract to be valid and enforceable. <u>Cheek v. United Healthcare of the Mid-Atlantic, Inc.</u>, 835 A.2d 656, 661 (Md. 2003) (citations omitted). For a contract to be enforceable, it must be supported by consideration. <u>Id.</u> "A promise becomes consideration for another promise only when it constitutes a binding obligation. Without a binding obligation, sufficient consideration does not exist to support a legally enforceable agreement." <u>Id.</u> An illusory promise, unlike a binding obligation, "appears to be a promise, but it does not actually bind or obligate the promisor to anything." <u>Id.</u> at 662. Because an illusory promise is not binding on the promisor, it cannot provide sufficient consideration to support an enforceable contract. <u>Id.</u>

An arbitration clause under Maryland law is "an independently enforceable contract" that is "a severable part of the contract." <u>Cheek</u>, 835 A.2d at 664–65. Accordingly, a court may not rely on consideration underlying the overall contract, but instead must find specific consideration for the arbitration agreement itself. <u>Id.</u> at 667.

Wood asks this Court to look outside the scope of the arbitration agreement to the unilateral modification contained elsewhere in the agreements (2021 Agreement at 8, 2023 Agreement at 11).[6] However, under Maryland law, "[i]n examining whether an arbitration agreement is a valid contract, we examine only the language of the arbitration agreement itself. <u>Hill</u>, 412 F.3d at 543 (citing <u>Cheek</u>, 835 A.2d at 664–65). While in <u>Cheek</u> the unilateral right to modify was contained in the arbitration policy, here the right to modify is outside the arbitration agreement. Looking at the arbitration agreement alone, neither party has the right to modify the scope of arbitration or arbitration procedures, and there is no illusory promise—both parties are required to arbitrate. The Court finds, as the Fourth Circuit applying Maryland law did in <u>Hill</u>, that looking at the arbitration agreement alone, there is adequate consideration, and the arbitration agreement is binding and enforceable.

Because the Court finds that Wood's dispute is subject to a binding and enforceable arbitration clause, the Motion to Compel Arbitration will be granted. Accordingly, the Court need not reach NFM's arguments that the Amended Complaint should be dismissed in part for failure to state a claim.

### 3.    Fee Shifting Provision

The last sentence of the 2023 arbitration agreement, which the Court has found controls, <u>see</u> <u>supra</u> Section II.C.1, states: "The provisions of this paragraph may be enforced by any court having jurisdiction and the Party seeking enforcement shall be

---

[6] This purported unilateral modification right comes from the language: "This Plan can be changed based on investor guidelines, state or federal guidelines, or revision of the NFM Policy." (2021 Agreement at 8, 2023 Agreement at 11).

14

entitled to an award of all costs, fees and expenses, including reasonable attorneys' fees, to be paid by the Party against whom enforcement is ordered." (2023 Agreement at 14). Wood argues that this fee-shifting provision should not be enforced against him because it applies only to motions to enforce arbitral awards, not motions to compel arbitration, and, in any event, it is unconscionable. (Opp'n at 11–14). NFM maintains that the fee-shifting provision is applicable to this Motion and is enforceable. (Reply at 10–11). The Court agrees with NFM.

First, under a plain reading of the contract, the fee-shifting provision does apply to motions to compel arbitration. The fee-shifting provision by its own terms applies to the "provisions of this paragraph," the arbitration agreement. The paragraph expressly includes "the determination of the scope or applicability of this agreement to arbitrate." (2023 Agreement at 14). A motion to compel arbitration by definition seeks to determine the scope and applicability of the arbitration agreement. Accordingly, a motion to compel arbitration is plainly a "provision of this paragraph" and is covered by the fee-shifting provision. Wood's argument that the repetition of the phrase "court having jurisdiction" within the paragraph changes the meaning is unavailing. There is no ambiguity here that the fee-shifting provision applies to provisions of the paragraph, including the applicability of the arbitration agreement. Where enforcement actions concerning the agreement may be brought has no bearing on this reading.

Second, Wood's argument that the fee-shifting provision is unconscionable fails. Wood claims that the fee-shifting provision is unconscionable because it authorizes a fee award for a prevailing defendant in an FLSA action and accordingly preclude him from

vindicating his statutory rights under the FLSA. (Opp'n at 15–16). However, the fee-shifting provision at issue applies only to actions to enforce the arbitration agreement itself, not actions to enforce the FLSA. As this Court has previously held, whether a party is entitled to "'reasonable attorney's fees, costs, and expenses' incurred in filing a motion to compel arbitration after Plaintiff initiates litigation" is "purely a matter of contract law" and has nothing to do with a plaintiff's ability to effectively vindicate her FLSA rights. Lillard v. Tech USA, Inc., No. ADC-20-308, 2020 WL 4925661, at *5 (D.Md. Aug. 21, 2020). Courts within this circuit have repeatedly upheld similar fee-shifting provisions. See e.g., Bracey v. Lancaster Foods, LLC, No. RDB-17-1826, 2018 WL 1570239, at *8 (D.Md. Mar. 30, 2018), aff'd, 838 F.App'x 745 (4th Cir. 2020) (granting motion to compel arbitration and defendant's request for attorney's fees because the arbitration agreement provided for such fees); Robinson v. Taboo Gentlemen's Club, LLC, No. 3:14-CV-123, 2015 WL 3868531, at *11 (N.D.W.V. June 23, 2015) (granting defendant fees and costs associated with litigating the motion to compel arbitration to defendant as provided for by the arbitration agreement). Accordingly, the Court finds the fee-shifting provision applicable and enforceable.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant NFM's Motion to Compel Arbitration and Dismiss for Improper Venue (ECF No. 15). A separate Order follows.

Entered this 4th day of March, 2025.

_____/s/_____
George L. Russell, III
Chief United States District Judge